UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| KALISA ROARK, surviving spouse of MICHAEL ROARK, deceased, | : : : : | Case No. 3:10-cv-87 |
| | | Judge Timothy S. Black |
| Plaintiff, | : : | |
| vs. | : : | |
| COMMISSIONER OF SOCIAL SECURITY, | : : : | |
| Defendant. | : | |

**ORDER THAT: (1) THE ALJ'S NON-DISABILITY FINDING BE FOUND NOT SUPPORTED BY SUBSTANTIAL EVIDENCE, AND REVERSED; (2) JUDGMENT BE ENTERED IN FAVOR OF PLAINTIFF AWARDING BENEFITS; AND (3) THIS CASE BE CLOSED**

This is a Social Security disability benefits appeal. At issue is whether the administrative law judge ("ALJ") erred in finding Plaintiff "not disabled" and therefore unentitled to a period of Disability Insurance Benefits ("DIB"). (*See* Administrative Transcript ("Tr.") (Tr. 42) (ALJ's decision)).

**I.**

Plaintiff filed an application for DIB on January 31, 2002, and alleged that he became unable to work as of April 12, 2001, because of rheumatoid arthritis, osteoarthrosis, nerve damage in his right leg, the residual effects of several surgeries on his neck and back, limited mental capacity, and cognitive and depressive disorders. (Tr. 524-41, 566-577).

Upon denial of his claims on the state agency level, he requested a hearing *de novo* before an ALJ. A hearing was held June 2, 2004, at which Plaintiff appeared with counsel and testified. (Tr. 541). Plaintiff died on September 6, 2004,[1] and another hearing was held on March 15, 2005, at which time his wife, Kalisa Roark, testified. (Tr. 524-541; 566-577). The ALJ issued a partially favorable decision on April 29, 2005, finding that Plaintiff had severe impairments. (Tr. 475). However, the ALJ determined that Plaintiff did not become disabled until he strained his right ankle in February 2004, just seven months before his death. Prior to February 2004, the ALJ determined that Plaintiff could perform work at the "light" exertional level with additional functional limitations. (Tr. 40-42).

Plaintiff's widow appealed the decision to the Appeals Council who remanded the case for a new hearing on September 27, 2007 because the file was lost. (Tr. 507-508). A new hearing was held on May 1, 2008, in which Ms. Roark testified. (Tr. 564-65). On September 18, 2008, the ALJ reaffirmed his prior partially favorable decision. (Tr. 14-42). The Appeals Council affirmed the decision on January 8, 2010. (Tr. 8).

Plaintiff was 40 years old on his alleged onset date. (Tr. 19, 515, 519). He completed the tenth grade, but was in special education classes. (Tr. 68-74). In eighth grade (at age 16), he read at a second grade level and had a substantially substandard IQ.

---

[1] On September 5, 2004, Plaintiff was admitted to intensive care after presenting to the emergency room in cardiorespiratory arrest. (Tr. 445). Resuscitative efforts were attempted, but were ultimately unsuccessful. (*Id.*) The cause of death was listed as anoxic encephalopathy, which occurs when there is not enough oxygen getting to the brain. (*Id.*)

(*Id.*) He held various jobs including production helper, machine off bearer, and hand packager. (Tr. 37, 305).

The ALJ's "Findings," which represent the rationale of his decision, were as follows:

1. The claimant alleged disability since April 12, 2001. He met the disability insured status requirements of the Act on that date and would have continued to meet them through December 2005.

2. The claimant did not engage in substantial gainful activity between April 12, 2001 and the date of his death.

3. The claimant has residuals of cervical and lumbar surgeries, an ongoing history of polysubstance abuse including alcohol, glue sniffing, marijuana, and prescription medication abuse, a depressive disorder which was likely secondary to his pattern of substance abuse, chronic obstructive pulmonary disease, and, since June 2004, hemianopsia with visual field construction. These impairments adversely affected his ability to perform basic work activity prior to his death and were therefore "severe" for purposes of the Social Security Act. The severity of these impairments did not meet or equal the level of severity described in Appendix 1, Subpart P, Regulations No. 4 at any time through his death.

4. The claimant was capable of performing the basic exertional requirements of light work from April 12, 2001, through February 14, 2004. However, he must have been permitted to alternate positions whenever necessary and could not have been expected to climb, stoop, kneel, crouch, crawl, or perform fine manipulation more than occasionally. He also could not have been expected to balance or to constantly twist his neck. He was also limited to working in clean-air temperature controlled environments. Due to his depression and limited academic skills, he was also restricted to performing low-stress, unskilled simple, repetitive tasks which did not involve fast-paced work, production quotas, interaction with members of the general public, or reading or writing skills. He was also precluded from performing jobs which would have involved occupational exposure to drugs or alcohol.

5. The claimant's allegations of total disability are not supported by substantial objective medical evidence or clinical findings and cannot be considered credible as they relate to the period from April 12, 2001, through February 14, 2004. His allegations of total disability between February 15, 2004, and September 6, 2004, are credible. (20 CFR 404.1529).

6. The claimant was unable to perform his past relevant work as production helper, machine off bearer, or hand packager.

7. The claimant's residual functional capacity for the full range of light work from April 12, 2001, through February 14, 2004, was reduced by the limitations addressed in Finding No. 4.

8. The claimant was 44 years old at the time of his death, which defines him as being a "younger individual" at all times relevant to this case (20 CFR 404.1563).

9. The claimant has a tenth-grade or "limited" education (20 CFR 303.1564).

10. Transferability of work skill was not material to the determination of the claimant's application for benefits in this case (20 CFR 404.1568).

11. Based on an exertional capacity for light work, and the claimant's age, education, and work experience, section 404.1569 of Regulations No. 4 and Vocational Rules 202.17 through 202.19, Table No. 2, Appendix 2, Subpart P, Regulations No. 4 would have directed a conclusion of "not disabled" from April 12, 2001, through February 13, 2004, regardless of the presence of transferable skills.

12. Although the claimant's additional functional limitations did not allow him to perform the full range of light work from April 12, 2001, through February 14, 2004, using the above-cited rules as a framework for decisionmaking, there are a significant number of jobs in the national economy that he could have performed from April 12, 2001, through February 13, 2004. Examples of 6,000 unskilled light exertion jobs are laundry folder and produce weigher. Examples of 1,500 unskilled sedentary jobs are dowel inspector and surveillance systems monitor. Altogether, there were as many as 7,500 such jobs in the Dayton, Springfield, Cincinnati, Ohio region from April 12, 2001, through February 14, 2004, and such jobs existed in significant and proportionate numbers at the national level.

13. The claimant was not under a "disability," as defined in the Social Security Act, at any time from the alleged disability onset date of April 12, 2001, through February 14, 2004 (20 CFR 404.1520(f)).

14. Between February 15, 2004, and September 6, 2004, section 404.1569 of Regulations No. 4 and Vocational rule 201.14 of Table No. 1, Appendix 2, Subpart P, Regulations No. 4 would have directed a finding that the claimant was "not disabled" if he had retained the functional capacity to perform the full range of sedentary work. If the range of sedentary work were significantly compromised, section 201.00(h) of Appendix 2 and Social Security Ruling 96-9P indicate that a finding of disabled would be appropriate with respect to this period.

15. Considering the claimant's exertional and nonexertional limitations within the framework of the above-cited rule, he could not have been expected to make a vocational adjustment to work which existed in significant numbers in the national economy between February 15, 2004, and September 6, 2004.

16. The claimant was under a disability as defined by the Social Security Act and Regulations between February 15, 2004, and September 6, 2004, the date of his death (20 CFR 404.1520(f)).

17. The claimant's history of substance abuse is not material to the finding of disability between February 15, 2004, and September 6, 2004.

(Tr. 40-42).

In summary, the ALJ concluded that Plaintiff was not entitled to a period of disability from April 12, 2001 through February 14, 2004. (Tr. 42).

On appeal, Plaintiff sets forth six "errors" but appears to be arguing three general issues: (1) the ALJ erred in failing to consider all of the limitations of Plaintiff's mental impairments and properly evaluate all of the record evidence; (2) the ALJ erred in failing to consider all of the limitations of Plaintiff's physical impairments, specifically treating

physician opinion evidence related to Mr. Roark's rheumatoid arthritis and back pain; and (3) the ALJ incorrectly found that Plaintiff's mental impairment since his alleged onset date was caused by his prior drug use and that the drug use was material to his current disability condition. Upon careful review, the Court finds Plaintiff's first assignment of error to be well-taken and dispositive.

## II.

The Court's inquiry on appeal is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). In performing this review, the Court considers the record as a whole. *Hephner v. Mathews,* 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found plaintiff disabled. As the Sixth Circuit has explained:

> The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts. If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm.

*Felisky v. Bowen,* 35 F.3d 1027, 1035 (6th Cir. 1994).

The claimant bears the ultimate burden to prove by sufficient evidence that he is entitled to disability benefits. 20 C.F.R. § 404.1512(a). That is, he must present sufficient evidence to show that, during the relevant time period, he suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

## A.

In his first assignment of error, Plaintiff claims that the ALJ erred in failing to consider all of the limitations of his mental impairment and properly evaluate the record evidence. The Court agrees.

In order to determine the relevance of a Plaintiff's I.Q., the social security administration established Listing 12.05:

> "Mental retardation refers to significantly sub average general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22. The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
> ...
> B. A valid verbal, performance, or full scale IQ of 59 or less; OR
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function...

20 C.F.R. § 404, Subpt. P, App. 1 § 12.05.[2]

---

[2] Under the theory of presumptive disability, a claimant is eligible for benefits if he has an impairment that meets or equals an impairment found in the Listing of Impairments. 20 C.F.R. § 404.1520(d). Listing 12.05 is one of those such listings.

-7-

Plaintiff's school records from Piqua City Schools document the following: (1) Plaintiff was in special education classes; (2) in the eighth grade (at age 16) he read at a second grade level and had a substantially substandard IQ; and (3) he dropped out of school after the tenth grade. (Tr. 68-75).

The mental examination of psychologist Dr. Boerger documented that: (1) Plaintiff's full scale IQ was 57, performance IQ was 59 and verbal IQ was 61[3]; (2) his reading skills were consistent with reading at the first grade level; (3) he had cognitive and depressive disorders; (4) his GAF was 35[4]; (5) he had marked restriction of his ability to understand and follow instructions, to maintain attention to perform simple repetitive tasks, and to withstand the stress and pressures associated with day to day work activity; (6) he had moderate restriction of his ability to relate to supervisors and follow workers; and (7) he was unable to mange funds. (Tr. 308-310).

The Commissioner argues that the IQ scores were improper, that Plaintiff had no significant work-related limitations, and, therefore, he did not meet the Listings. The ALJ

---

[3] The relevant I.Q. range is as follows: 40-54 indicates moderate mental retardation; 55-69 indicates mild mental retardation; and 70-84 indicates borderline mental retardation. "In cases where more than one IQ is customarily derived from the test administerd, e.g., where verbal, performance, and full scale IQs are provided, we use the lowest of these in conjunction with 12.05." 20 C.F.R. § 404, Subpt. P, App. 1 § 12.00 D(6)(c).

[4] The Global Assessment of Functioning ("GAF") is a numeric scale (0 through 100) used by mental health clinicians and physicians to subjectively rate the social, occupational and psychological functioning of adults. A score of 31-40 indicates some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several ares, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work).

dismissed the IQ scores based on one comment by Dr. Boerger, that the scores "were lower than that reflected in his past occupational and social functioning." (Tr. 30, citing 308). However, Dr. Boerger clearly reported that Plaintiff's IQ scores fell "consistently in the range of mild mental retardation." Moreover, Dr. Boerger never alleged that the IQ scores were invalid or underestimated – he simply stated that they were lower than reflected in past occupational and social functioning.[5] The ALJ also misstates that Dr. Boerger found Plaintiff to be of low average intelligence, when, in fact, Dr. Boerger noted that Plaintiff "appeared to have functioned in his life as an individual with borderline to low average level intellectual abilities." (Tr. 35, 308). The Court finds that the ALJ misconstrued these statements made in Dr. Boerger's report. Not only did Dr. Boerger find Plaintiff to have a full scale IQ of 57, he also found him to have a GAF of 35, and to be markedly impaired in three of the four work-related mental abilities. Dr. Boerger's assessment supports a finding that Plaintiff meets Listings 12.05B and 12.05C.[6]

---

[5] However, this does not take into consideration the fact that "[a] mentally handicapped individual who performs simple tasks subject to close and continuous supervision would not have demonstrated ability to engage in substantial gainful activity solely on the basis of the rate of his remuneration for such activity." 20 C.F.R. § 404.1534(a). In his decision, the ALJ does not reference § 404.1534(a) or make any findings of fact relevant to the determination of whether the work Plaintiff performed was "substantial gainful activity" or whether it was "closely and continuously supervised work" by a mentally handicapped person which is not "substantial gainful activity." *See e.g., Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (concluding that claimant's past relevant work was performed under "special circumstances" - lower than typical productivity and special transportation needs - and did not constitute substantial gainful activity).

[6] Also of note is that Plaintiff received outpatient counseling at Miami County Mental Health Center from October 2001 to April 2003. (Tr. 185-233). Michael de Colgyll, Plaintiff's therapist, filled out a medical source statement on March 31, 2003 stating that Plaintiff had the substantial loss of ability to perform ten of the 14 activities listed on the statement in a regular competitive environment, and at best, could do so only in a sheltered work setting where special considerations and attention were provided. (Tr. 186-88). The ALJ ignored evidence that Plaintiff was only capable of working in "highly supported situations."

Additionally, the Commissioner argues that because a school evaluator stated that Plaintiff "should do well in an assembly line type work situation," that despite Plaintiff's school records, he should have been able to work in an assembly line. The Court finds, however, that the school's evaluations are compelling and cannot be discounted based upon one speculative comment.

The Court finds that Plaintiff's IQ score of 57 is clearly in the range for Listings 12.05 B and C. Additionally, his school records establish an onset before the age of 22. (Tr. 68-75). The combination of a full scale IQ of 57 and an onset before the age of 22, qualifies Plaintiff for Listing 12.05(B). However, even if the Court were to determine that Plaintiff's IQ was higher than 57 as the Commissioner suggests, Plaintiff would still meet Listing 12.05(C) with an IQ of 60-70[7] in combination with the fact that the ALJ limited Plaintiff to "light" work.[8] (Tr. 40-42).

Accordingly, the ALJ's finding is not supported by substantial evidence. The Court finds that Plaintiff meets the criteria of Listing 12.05 (B) and (C) which qualifies him for disability insurance benefits from the alleged onset date of April 12, 2001.

---

[7] Even if the Court were to find that Plaintiff's IQ was higher than 57, which it declines to find, there is no evidence that it exceeded 70.

[8] An RFC restricting the claimant to light work is a "significant work-related limitation of function" that satisfies Listing 12.05(C). *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985).

## III.

When, as here, the non-disability determination is not supported by substantial evidence, the Court must decide whether to reverse and remand the matter for rehearing or to reverse and order benefits granted. The Court has authority to affirm, modify or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 501 U.S. 89, 100 (1991).

Generally, benefits may be awarded immediately "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994); *see also Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir. 1990); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 782 (6th Cir. 1987).

The Court may award benefits where the proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where the proof of disability is overwhelming. *Faucher*, 17 F.3d at 176; *see also Felisky*, 35 F.3d at 1041; *Mowery v. Heckler*, 772 F.2d 966, 973 (6th Cir. 1985). Such is the case here.

Here proof of disability is overwhelming and remand will serve no purpose other than delay. As fully recited herein, in view of the extensive medical record of evidence of disability, Plaintiff's school records, and the credible and controlling findings and opinions of Dr. Boeger, proof of disability is overwhelming.

## IT IS THEREFORE ORDERED THAT:

The decision of the Commissioner, that Plaintiff was not entitled to disability insurance benefits from April 12, 2001 to February 15, 2004, is hereby found to be **NOT SUPPORTED BY SUBSTANTIAL EVIDENCE**, and it is **REVERSED**; and this matter is **REMANDED** to the ALJ for an immediate award of benefits; and, as no further matters remain pending for the Court's review, this case is **CLOSED**.

Date: 3/1/11

Timothy S. Black
United States District Judge